

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-2009

# Wang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2223

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Wang v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1366.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1366

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

IMG-065                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2223
_____

MING WEN WANG,
                                    Petitioner
vs.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order
of the Board of Immigration Appeals
Agency No. A98 113 630
Immigration Judge: Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 13, 2009

Before:  FUENTES, WEIS and GARTH, Circuit Judges

(Opinion filed May 14, 2009)

_____

OPINION
_____

PER CURIAM.

        Ming Wen Wang petitions for review of an order of the Board of

Immigration Appeals (BIA), which dismissed his appeal of an Immigration Judge's (IJ's)

final order of removal.  We will deny the petition for review.

1

Wang is a native and citizen of China. Wang testified as follows. He and his wife had a baby girl in 1992. His wife was then forced to wear an IUD. In April 2000, she had her IUD removed by a private doctor so they could have more children, although they did not have permission to do so. Wang's wife became pregnant in August 2000 and hid in her younger sister's house. After birth control officials unsuccessfully sought her there, she moved to her older brother's house for eight months. She gave birth to a boy on March 28, 2001 with the help of her cousin, who was a nurse. They were not given a birth certificate, because they did not have a birth permit and could not pay the 3,500 RMB fine. The baby boy was left at a relative's house to avoid birth control officials. Wang told people the boy was his sister's son, who had come to China from the United States.

Wang's father died on September 6, 2003, and birth control officials saw Wang and his son at the funeral, and saw how the son looked like Wang. They asked Wang to get sterilized, but he refused. In July 2003, he was chased on his motorcycle by birth certificate and work unit officials in a truck. He tried to get away, but fell off his motorcycle. Officials took him to a clinic. He was afraid they would sterilize him, and he was able to escape, because it was dark. Officials took his mother away and detained her.[1] Wang hid in his mother's house, but then left China illegally with the help of a

---

[1] We note that the Government now interprets Wang's testimony concerning the detention of his mother to mean that his mother was detained because of Wang's *brother's* failure to comply with birth control laws. The testimony is not entirely clear, but because we uphold the IJ's adverse credibility finding on other grounds, what Wang

smuggler.  His wife remains in China and has not been sterilized.

The Immigration Judge (IJ) found that Wang was not credible, and denied all relief.  The Board of Immigration Appeals (BIA) found "no clear error" in the IJ's adverse credibility finding, and pointed out four specific problems with Wang's testimony:  (1) Wang testified that his wife was terminated from employment following birth of the second child but the household registration indicates she was employed; (2) Wang testified that his mother was detained, but she did not mention it when she testified at his hearing; (3) Wang did not explain why family planning officials would be at his father's funeral; (4) Wang did not ever state that family planning officials articulated their desire to sterilize him when they chased him on his motorcycle.  The Board also found it implausible that family planning officials would try to apprehend him through a vehicular chase rather than simply going to his home. Wang filed a timely, counseled petition for review.

We review the final order of the BIA, but to the extent that the BIA adopts parts of the IJ's opinion, we review the IJ's opinion to determine whether the BIA's decision to defer to the IJ was appropriate.  Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005).  "We will uphold the [adverse credibility] findings . . . to the extent that they are supported by reasonable, substantial and probative evidence on the record considered as a whole, and will reverse those findings only if there is evidence so compelling that no

_____

meant to say about his mother's detention is immaterial.

3

reasonable factfinder could conclude as the [IJ] did." Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003). In general, "minor inconsistencies and minor admissions that reveal nothing about an . . . applicant's fear for his safety are not an adequate basis for an adverse credibility finding." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (internal quotation marks and citation omitted). Any discrepancies must involve the heart of the asylum claim. Id.[2]

The record here does not compel the Court to overturn the adverse credibility finding. We note particularly two aspects of the IJ's adverse credibility finding that go to the heart of Wang's claim. First, Wang claimed that his wife had to go to a private doctor to secretly have her IUD removed, but the receipt he provided that was purported to be for the IUD removal was a receipt from a government entity. Second, Wang testified that his wife took leave from her job to surreptitiously have the couple's second child, and later lost her job, but the family registration book Wang provided showed that his wife was still working. A.R. 377. These inconsistencies undercut Wang's claim that he and his wife feared persecution for having a second child.

Further, even assuming that Wang was entirely credible, he did not show that he suffered past persecution, nor did he show a likelihood of future persecution. The only harm Wang suffered in the past was when he lost control of his motorcycle, which

_____

[2] The provisions of the Real ID Act of 2005 regarding review of adverse credibility findings do not apply to cases such as this one, where the asylum application was filed before the enactment of the Real ID Act. Real ID Act of 2005, Pub. L. No. 109-13, Div. B, § 101, 119 Stat. 231 (May 11, 2005).

was his own doing. Aside from Wang's one statement that after birth officials found that he had two children, "[t]hey started to ask me to go for sterilize," A.R. 127; there is no other evidence that he was even asked to undergo sterilization, much less any evidence that such sterilization would be forced. Wang acknowledged that when the birth control officials were chasing him and took him to the hospital for his injuries, they did not say anything about him being under arrest or that he would be sterilized. A.R. 146-47. We further agree with the BIA that the reasonableness of Wang's fear of future persecution is reduced given the fact that his wife, who allegedly also violated the family planning policies, has been living in China without harm for the past five years. A.R. 2. The BIA thus properly denied asylum and statutory withholding of removal.[3]

For the foregoing reasons, we will deny the petition for review.

---

[3] We further agree with the BIA that Wang did not demonstrate that it is more likely than not that he will be tortured if he is returned to China.